132451 U.S.A. v. Joseph Michael Krul. Arguments not to exceed 15 minutes per side. Mr. Nelson for the appellant. Good morning. How are you? I'm fine, thank you. Paul Nelson on behalf of Joseph Krul. And I was going to say that I reserved some time for rebuttal, but I knew I'd better say it and not have to, but not say it and have to. In the Tapia case, Your Honor, the Supreme Court made it clear that a sentencing court may not consider the rehabilitative needs of a defendant in imposing or lengthening a sentence. So here's the question I have. Of course, I'm very interested in this, given my service, but is it about the length of the sentence? Is it simply about incarceration as related to rehabilitation? Or is it the character of the sentence or the characteristics of the sentence? Because, of course, district court judges all the time impose characteristics of sentencing that are rehabilitative, right? I guess I'm not sure, Your Honor, what you mean by characteristics of sentencing. Well, so I'm going to, at sentencing, with some frequency, recommend the 500-hour intensive drug treatment program, right? Well, that, again, Your Honor, that's a recommendation, and that's one thing, and there's been quite a bit of litigation or had been in the past over, and I think, I can't remember now the case in this circuit, where it was decided that it's error for a district court to quote-unquote order that someone participate in the 500-hour program because that's at the discretion of the Bureau of Prisons. Of course, on supervision, we require it all the time. Well, on supervision, and that's different, and that's another distinction that the Supreme Court made in Tapia, that there are things that a court can order when someone is going to be placed on supervised release that, after Tapia, the sentencing court cannot require or cannot factor into the sentencing decision for the actual sentence itself. And part of that, I think, is going back, another case that started out in this circuit, I think it was one of the U.S. v. Johnson cases in the Supreme Court, where the Supreme Court distinguished between the basic rationale for incarceration as opposed to the rationale for supervised release. And so, in... Has that finished your... Yeah, no, I think that does. But I point out, Your Honor... I'd like to ask... Sure. In Tapia, or however you say it, the Supreme Court was reviewing a case where the length was explicitly made longer in order for one of these programs to be completed, and it was also out of a circuit in which it had been held that that was a legitimate basis for determining the length of incarceration, so that if the judge was a little unclear, which I guess the judge wasn't, you could assume that in that circuit that's what was going on. We don't really have that here, do we? Well, at one... What we have at most is sort of an inference from an inference that he might have taken that into account in a circuit where you're not supposed to take it into account, and we would more likely assume that it wasn't being taken into account. Well, I... So I'm just wondering whether this is an offense, is a violation of Tapia or not. That's my question. Well, I would point out, and it just sort of dawned on me, in fact, last night, that the parallel between this case and the Tapia case in terms of what happened I think is quite close. In Tapia, in both cases, the defendant received top of the guideline sentence. In Tapia, the district judge gave two reasons for imposing the sentence, or at least according to the Supreme Court, where they said that it was... And I think the judge there said the first is to give it sufficient time to participate in the 500-hour program. And just, I think, in a parenthetical, the court noted that the second was to protect the public, I believe. Here, the district court... Here in the contrast, he was clearly contemplating going higher than the range, right? Well, he... Because that's what he said? The judge said that, I thought of going higher. I think there's plenty of reasons for going higher. To me, that means he wanted to go higher. But the judge didn't say what those reasons were. There was no recommendation in the... Because there's plenty of reasons for going higher. Well, there was no recommendation... A bunch of other things, but I don't want to... I'm not going there. I think this is enough. But other than the... That doesn't sound like he's giving him more so that he could have time to do a drug program, does it? Well, I think... It just doesn't... To me, that just doesn't raise that red flag. Well, in fact... And there clearly was a red flag at least in Tapia, where the record showed that the length was extended to make sure that there was time to do this. Well, I think in the parallel in this case, on page 12 of the sentencing transcript, which is page ID number 147, as the judge is going through an explanation of his sentencing rationale, at one point he says... It's on line 18. Talking about... And it's a little bit unclear what he's referring to when he says, I think going back when he's talking about the entire... As I read it over the entire situation here, but it says it requires that you be taken out of the community for a while and you be given some programmatic opportunities, some of which you've already started. And that's quite close to the statement in Tapia, although in reverse order, that the judge had talked about some of the things that Mr. Kral could use. It says, I think it requires, A, you be taken out of the community for a while and be given programmatic opportunities. I don't see why that sentence doesn't suggest maybe the programmatic opportunities are in the supervised release. I mean, he hasn't started talking about the length until he gets to the next paragraph, or even the one after. Well, and then again, in fact, and again on page 13, the following page, when the judge says, I think 61 months, it was 63 months, should be able to give the Federal Bureau of... Pardon? Isn't that where he's talking about not going higher in that paragraph? That starts off... I have this before me, but I don't have the same line numbers. Sure. It's in the middle of the large paragraph in the middle of that page, and the judge did start off talking about thinking of going higher, but then he says, I think 61 months should be able to give the Federal Bureau of Prisons an opportunity to provide you with education, educational opportunity, and will give you a mental health evaluation and placement, and presumably some medication that will deal with your emotions, that will deal with your ability to interact sociably with other people, will give you the ability to hold your anger in check, and will give you an understanding that laws must be... That's telling him what he can get. I guess I can tell you what I'm really concerned about. I'm concerned about imposing a certain clear statement rule on district judges when they sentence. I'm not sure what that gets us. In a case where, unlike in Tapia, where there was a clear possibility, at least, that this sentence was longer than it otherwise would have been in order to give him this activity, here you have language which is unexceptionable, except for this discussion in this longer paragraph that says, I'm thinking of going over, but I'm not going to because this is enough. You'll have this, you'll have that. If that's a language that's not allowed to be said, we'll be turning over cases that express this concern about this language, and judges are just going to turn around and say the right thing, and we won't really have gained anything. Well, I guess it's sort of a mouthing of words requirement. That's what I want to avoid. If you're asking us, in effect, to create a mouthing of words requirement, I guess I'm just not too sympathetic with that. Well, Your Honor, I understand exactly what you're saying, and I think the phrase that this Court had used in the past, instead of saying a mouthing of words, was ritualistic incantation. It sounds to me, at least I want you to address my concern, that you're asking us for a ritual incantation. Well, you look at this judge, this judge sits in this circuit where you're not supposed to do it. He hasn't said, I'm doing it. He's just said, I'm not going over the limit because this will be enough time for you to take part in these wonderful programs that you want to take part in, and you turn that into a failure of a ritual incantation, you're not accomplishing anything for justice or for the law or for anything. Well, I guess I would disagree with you, Your Honor, in terms of what the judge said as offering an opportunity to the defendant to participate in programs or to make a decision, when the judge says it should be able to give the Federal Bureau of Prisons an opportunity to provide you with these things, that he's putting it from the point of view of that. And I think it's a distinction without a difference what this judge said here, and the judge in Toppy is saying this is so you can get into the 500-hour program. And again, even the Supreme Court, it's 131 Supreme Court at 2392, the last paragraph on that page, the court says, talking about the fact that there's nothing wrong, that it's a positive thing. And we're not saying that there's anything wrong in the overall scheme of things with having someone participate in rehabilitative programs, but in the proper context. And the Supreme Court says that, that there's nothing, where they say the sentencing court here did nothing wrong and probably something very right in trying to get Toppy into an effective drug treatment program. It says, but the record indicates that the court may have done more. It may have selected. And so that's the issue here, that the record is not clear that this was not a factor. And just on a personal note, and I've mentioned this in several other arguments before the court on several other issues, that from the point of view of whether it's requiring a ritualistic incantation or not, that defense attorneys, in particular, in a position where our clients have issues that they think merit some consideration, and if there is just a ritualistic incantation, and I know one of the other judges, the chief judge, now says, and I'm aware under Toppy that imprisonment is not a basic reason for, I forget exactly what he says, but basic reason for imposing a sentence of incarceration, that from our point of view it doesn't help. So that's one reason. On a personal level, when we're trying to explain to our clients why they got the sentence they did in light of what they think are legitimate, non-frivolous arguments for mitigation. So I think it's not, this is not just a situation where we were asking the court to impose a rule just for the sake of imposing a rule. We think it's important. Mr. Nelson, there was no objection to the alleged Toppia error here. No, that's correct. So our review is for plain error? No, I would disagree with that, Your Honor. You disagree with it? This court, in the Dean case and the Walker case we cited, both said that it is, that a Toppia error is basing a sentence on an improper factor, which is substantive unreasonableness, and it's subject to review just for an abuse of discretion. Was there a Bostick question? There was, yes. And they said no? They said no legal objection. I think that was the question. How do you get past the Bostick argument? I mean, the Bostick rationale is that you're giving the Defendant Defense Counsel a chance to make the correction while the judge is still imposing the sentence here. And it seems to me that this is the type of error that would be covered by Bostick. Well, again, this could, it may, and I can understand why you would feel that way, but there are at least, there are two published opinions, the Dean case and the Walker case, which expressly say that this is not subject, it's not something that has to be preserved to be raised on appeal, that it is substantive. Well, it doesn't have to be preserved. Well, I mean, it can still be raised. It's whether our standard is review for plain error or just common error, I think. Well, I agree, and I realize my time is up. Assuming we review for plain error, the sentence here is still within the guidelines, although it's the high end of the guidelines. And Judge Bell gave a lot of other reasons why this was an appropriate sentence. Why wouldn't this be harmless error under these circumstances? I would direct the Court's attention, although it's an unpublished case, the Cofelt case that the government cited for the proposition that plain error review should be applied, where the Court went through the panel in that case, went through very clearly the fact that even under plain error, it just applied plain error review and determined that it was appropriate to vacate the sentence and remand, that all of the factors. Why this case it would be appropriate under plain error review to reverse and remand? Because I think it's unclear. The record is just not clear that the judge did not base his sentence on an improper factor, that the statements that were made by the Court. Okay. Under plain error, though, it's your burden to establish. I mean, you kind of reversed it around the negative, that it's unclear whether he did or not. But under plain error, you have the burden of establishing a denial of substantial rights. And have you sustained that burden? Well, I would think so, Your Honor, that as the Cofelt panel indicated, that there's a substantial right to be sentenced according to proper factors and not be sentenced based on improper factors. All right. Thank you, counsel. Good morning. Sally Behrens on behalf of the United States. I thought I should start perhaps with the plain error standard of review argument, because there is confusion in the case law about what standard applies. The law in Sixth Circuit appears to be unsettled, both as to whether plain error applies in TAPI appeals and as to whether TAPI appeals are appropriately categorized as procedural or substantive reasonableness. There was actually a case that just came out last week, United States v. Musgrave, which is number 13-3872, which indicated in a footnote that whether consideration of an impermissible factor, those challenges, it's not clear whether they should be regarded as procedural or substantive reasonableness. I think, though, at the end of the day, it matters a little bit less which bucket we drop this particular type of appeal into, and instead we should turn back to the principles of Vonner and Bostic, which is that if an issue can be clarified or corrected at the district court level, it should be required that the appellant do so, otherwise they suffer from plain error. That would be true for any factor that a sentencing judge is not supposed to look at. So if a sentencing judge is not supposed to look at this factor, it would be nice if the lawyer said, Judge, you're not supposed to look at that factor. But looking at various factors, that's the essence of substantive review. I don't know what substantive review is other than attacking a decision because the judge is looking at the wrong factors. I think it's clear that what constitutes substantive reasonableness versus procedural reasonableness is kind of a false dichotomy, and there is a spectrum where these issues fall. You can say that, but to me the difference is whether the judge needs to say something or do something that's procedural, and whether the district judge is taking something into account that he shouldn't be taking into account, or not taking into account what he should take into account, that gets to the substantive balancing of factors. I would say that in a case like this, a Tapia case, the real issue here is whether or not the district court is applying the statute 3553 to the facts, and that seems like a procedural error as opposed to a substantive error. I would direct the court also to another case that we didn't cite. I just don't know what a substantive error is then. I think the basic, the heart of a substantive reasonableness case, the mine run case, if you will, is where a defense counsel makes all of their arguments for leniency on the record, and then the court pronounces a sentence. We should not require that that defense counsel then object again to the argument or to the actual sentence that's pronounced when they've already made their arguments. In other cases where... Wouldn't that apply when you say, well, there's five factors here. I don't think you should apply this factor, and I do think you should apply this one, and this one should apply strongly, and this one should apply weakly. And then at the Bostik, they don't have to go back and rehearse all of those, do they? That's the whole idea of the exception in Bonner. It is, except in a case like this where what the appellant is saying is the court considered rehabilitation in a way that it shouldn't have. That is certainly an objection that could be made and should be made because the court... Just because it's so concrete, so identified to a particular case or something like that? It's identifiable, and the court can clarify or correct it. And I would also turn the court to the recent Supreme Court case in Henderson. In Henderson, which I agree was not... This issue wasn't litigated in Henderson, but the court's language is very broad. It says, since Henderson's counsel had not objected in the trial court, the Court of Appeals could not correct the error unless Rule 52 be applied. The rule, however, applies only if the error is plain. Let me ask you this, then, if that's all right. What if the review is abuse of discretion and not plain error? Do you lose? I don't think we lose. Because Tapia doesn't even apply? Because Tapia is a different case than the case at issue here. How is it different? In Tapia, the district court specifically said, number one, you need to get this type of rehabilitation, and I'm making your sentence long enough to do that here. Well, Judge Bell didn't go the second step. He did say that you need rehabilitation, but he didn't do the second step, and, therefore, I'm opposing so many months. I mean, the fact that he didn't expressly go the second step, is there still not a Tapia error, though? Tapia says that a district court cannot impose or lengthen a sentence. The fact that rehabilitation is a factor that goes into the mix of the ultimate sentence, I mean, that's a Tapia error itself, isn't it? Tapia says a court commits no error by discussing the opportunities for rehabilitation without prison or the benefits of specific treatment or training programs. To the contrary, a court properly may address a person who is about to begin a prison term about these important matters. It's also a Rule 3553A2D factor, educational, correctional, medical treatment. The district court is supposed to consider those things. Here, the defendant raises the issue of rehabilitation. That is the crux of his allocution. I need rehabilitation. I'm excited about rehabilitation. If the district court hadn't addressed it, we'd be hearing a different appeal, namely the defendant would be arguing that the court hadn't responded to the arguments in allocution. So that 3553A reference really goes to my very first question, which is as a trial court judge, I am supposed to consider those resource-related issues. And I'm not sure Tapia really stands for the proposition only in the context of supervision. So really, is this about a length of sentence issue? In other words, is this in order for you to get the help you need, I'm going to have to imprison you for a longer period of time. And that's really the crux of the problem in Tapia. I can't, as a trial court judge, say I want you to stay in longer. And I'll tell you another way this comes up, and I'd like to ask you this question, which is what about a sentence in which a judge says, well, I'm going to sentence you to five years because I want you to stay clean from drug abuse and stay away from bad influences. Is that okay under Tapia? If the district court imposes a sentence, so decides on incarceration instead of probation, say, because he or she wants to rehabilitate the defendant, I think that's clearly error. If the court says, I'm giving you a longer sentence because that will help you rehabilitate yourself, I think that is a clear Tapia error. However, it is certainly appropriate for the district court to talk to the defendant about the importance of rehabilitation and the importance of taking opportunities for rehabilitation and the fact that the prison system may be able to offer those opportunities. Does that answer your question? It does. What about requirement of a GED? It probably falls within Tapia. I don't know that I've thought that through entirely clearly. That's a little unfair. It's a little far afield. What's the hypothetical requirement? Is it that they study for it or they obtain it before they get out? Certainly a court cannot order someone to get their GED before they get out of prison. Or figure out it will take you six more months and therefore give you six more months to do it. I think that's probably Tapia error. I think the way the language typically works that's recommended by lots of probation offices is that you study for the GED. If you don't get it, you can't force somebody to complete it by the time they're completed. Then in supervision, you have to keep working at it. And supervision is clearly different. In supervision, we can impose a lot of things on a defendant that are not actually available or something that we can impose during incarceration. Counsel, can we go to the specific facts in this case? Yes. This is at page 13 of the sentencing transcript starting at line 12. Judge Bell is talking about the length of the sentence that he's decided to impose. I think 61 months, and that's what he's imposed here, should be able to give the Department of Prisons an opportunity to provide you with education, educational opportunities, and will give you a mental health evaluation and placement and presumably some medication that will deal with your emotions and will deal with your ability to interact sociably with other people and give you the ability to hold your anger in check and will give you the understanding of laws that must be obeyed. I mean, that sounds rehabilitative, doesn't it? Certainly, he's talking about rehabilitative operations. Okay, and he's also putting the context of, I've imposed a 61-month sentence for these reasons. I mean, how is that not a tapiot error? I don't think that he says, I am giving you 61 months for those reasons. I think that... Well, that's exactly what he says. He says, I think 61 months will do this. And the implication is that maybe a lesser sentence would not do this, that you have to have the length of 61 months to fully accomplish what he wants, which includes these rehabilitation goals. Respectfully, I disagree that... No, isn't that an appropriate implication? I disagree that it is that clear. I think that you have to read the whole... It's that clear. Okay, well, is it that clear that he's not, then? In tapiot, wasn't it the Supreme Court had some language that it's not clear that the sentence was imposed for rehabilitative purposes? Looking at the whole sentencing transcript, it starts out with the defendant talking about the importance of rehabilitation. Okay, I'm looking at that section. He starts about 61 months. I agree, but the context is important. Right before that section, after talking about the criminal history of the defendant, he talks about, well, I thought about going higher here. I thought about going higher, but 63 months, he misstates 61 months, but 63 months, he says, should be able to give the Federal Bureau of Prisons an opportunity to provide you essentially with what you've just asked me for, with rehabilitative services. If anything, he has not lengthened the prison term in order to get to an amount. He has, if anything, shortened the prison term because he thinks that's enough. And, again, under tapia, the error is either imposing a sentence instead of probation or lengthening a sentence, and this is not even, I don't think it's even arguable that he has lengthened a sentence here in order to provide the defendant with rehabilitation. So even if you think that he is saying, I'm giving you 63 months because that's enough, he's not lengthening the sentence here in order to do that. It just happens that 63 months, the top end of the guidelines, is also enough to give the defendant the rehabilitation services that are appropriate. I don't even think that you should go that far, though. I think that this is appropriately read as responding to the defendant's request for rehabilitation and is in the mix of several factors, including the defendant's criminal history. He talks about the thing that troubles me most in this case, aside from the gun, the fact that this gun was used to kill seven people, is that the criminal history is off the charts. And that's the thing that troubles him most in providing the sentence. Thank you, Counsel. Thank you. Thank you. I guess one point that Ms. Behrens just made about the fact that the gun had eventually killed several people, I don't think that was part of the analysis here. It was a fortuitous event, very unfortunate, but it had nothing to do intentionally with Mr. Kral. But I think in sort of an interesting situation, because I think I'm maybe taking a position that I'm usually on the other side of in most of my cases, what the government is talking about here is what the government thinks the law should be, as far as TAPI is concerned, and as far as the standard of review. Our position is that that may well be a legitimate argument, but the fact of the matter is what the law is. And this Court has said in two published opinions that it's a substantive unreasonableness issue, that it's an abuse of discretion because it's relying on improper facts. What do you do with Henderson, the Supreme Court case? Henderson, I don't believe that Henderson is as helpful here as the government would like it to be. Henderson, and again, look, the question presented in Henderson, although there was an introductory paragraph, simply was when a governing law is unsettled at the time of trial, but settled in the defendant's favor by the time of appeal, should an appellate court reviewing the, quote, plain error close quote, apply Johnson's time of appeal standard as the First, Second, Sixth, Tenth, and Eleventh Circuits do, or should the appellate court apply the Ninth Circuit's time of trial standard, which the D.C. Circuit and the panel below have adopted? And even the introductory paragraph to the question presented there did not refer to Tapia. It happened to arise in the context of a Tapia case, but the issue was at what point is an error determined to be plain for purposes of review? So I think that that is, that the Henderson case simply is not applicable here. I think the Sixth Circuit rule, for example, Rule 32.1b, says published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc. We're familiar with that rule. And I think that the plain error, and even Cofelt, and I will admit that I was, I represented Mr. Cofelt in that case, and the court applied plain error review, but ultimately he got the result that he was looking for, and it seemed not to make any sense to litigate, try to litigate the issue of whether plain error review was appropriate when he received the remedy that he was seeking. But I think here that, and I think as you point out, Judge Griffin, that this is, I think at best from the government's point of view, it's unclear what Judge Bell intended here. And that was what happened in Tapia. And I think that the Supreme Court, again, the Supreme Court said that the court may have done more. It may have considered this. And on page 2393, it says the statement suggests that the court may have calculated the length of Tapia's sentence to ensure that she received certain rehabilitative services. And that a sentencing court may not do. It suggests that the court may have considered this. Yes. As opposed to have held definitively that it did. That's the same argument made here, right? I think so. Yes. Again, on page 2390 of the opinion, the Supreme Court said Section 3582A prohibits a court from considering rehabilitative needs to impose or lengthen a period of confinement when selecting a sentence from within or choosing to depart from the guidelines range. Each actor at each stage in the sentencing process receives the same message. Do not think about prison as a way to rehabilitate an offender. And I think here it's the same. That's clearly what happened, that rehabilitation played a significant role. It was considered. The statement by Judge Bell certainly suggests strongly that that was a factor, that he didn't have to go more to give the BOP the opportunity to do this, but that doesn't mean that the sentence that was imposed did not take that into consideration. Thank you, counsel. We appreciate your argument. The case will be submitted.